UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | | |
|---|---|---|
| SHANA COTTONE, | : | |
|     Plaintiff | : | |
| | : | |
| | : | |
| v. | : | C.A. No. |
| | : | JURY TRIAL DEMANDED |
| | : | |
| CITY OF BOSTON, by and Through | : | |
| Its Treasurer, Ashley Groffenberger; and | : | |
| MICHELLE WU, | : | |
|     Defendants. | : | |

## COMPLAINT

    Plaintiff Shana Cottone hereby commences this first amendment retaliation and discrimination action against her former employer the City of Boston and its Mayor, Michelle Wu, for violations of 42 U.S.C. § 1983; Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e et seq.; and Mass. Gen. Laws c. 151B. Plaintiff alleges the following:

### The Parties

1. Plaintiff SHANA COTTONE ("Cottone") is an individual, female person of legal age, who, at all times relevant to this action, was a member of the Boston Police Department (the "BPD"), an employee of the City of Boston, and a resident of the state of Massachusetts. Cottone is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983; and an "employee" within the meanings of 42 U.S.C. § 2000e(f) and Mass. Gen. Laws c. 151B § 1(6).

2. Defendant CITY OF BOSTON is a municipal corporation organized under the laws of the Commonwealth of Massachusetts and is being sued by and through its Treasurer Ashley Groffenberger. At all times relevant to this matter, the City of Boston managed, maintained, operated, and controlled the Boston Police Department headquartered at 1 Schroeder Plaza, Boston, MA 02120 where it employed Cottone. At all times relevant to this action, Defendant City of Boston was an "employer" within the meanings of 42 U.S.C. § 2000e(b) and Mass. Gen. Laws c. 151B § 1(5), and a "person acting under color of law" within the meaning of 42 U.S.C. § 1983.

3. Defendant MICHELLE WU ("Mayor Wu") is an individual, female person of legal age, who, at all times relevant to this action, was an employee of the City of Boston and served as its Mayor.  At all times relevant to this action, Defendant Wu exercised control over the terms and conditions of Cottone's employment and had the authority to terminate Cottone's employment without the need for approval from the Boston City Council.  At all times relevant to this action, Defendant Wu was a "person acting under color of law" within the meaning of 42 U.S.C. § 1983 and is named as a defendant in this action, individually, and in her official capacity as Mayor of the City of Boston, who actively participated in, and stands responsible for the unconstitutional, wrongful, tortious and negligent acts, errors and omissions complained of herein.

## Jurisdiction and Venue

4. This Court has federal question jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 2000e et seq.

5. This Court's exercise of supplemental jurisdiction with respect to Plaintiff's state law claims is warranted because they are so related to Plaintiff's federal claims that they form part of the same case or controversy.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b),(c) and 42 U.S.C. § 2000e-5(f)(3) because Defendants have offices, conduct business, and can be found in this District, and the causes of action arose and the acts and omissions complained of occurred herein.

7. Personal jurisdiction exists over Defendants in that they maintain sufficient minimal contacts in the Commonwealth of Massachusetts.  Specifically, Defendants engage in systematic and continuous activity in the Commonwealth of Massachusetts.  Moreover, a substantial portion of the actions complained of herein occurred in the Commonwealth of Massachusetts.

## Administrative Procedures

8. On January 2, 2022, Cottone filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination (the "MCAD") for violations of Mass. Gen. Laws c. 151B (the "MCAD administrative charge"), which was simultaneously filed with the Equal Employment Opportunity Commission (the "EEOC") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. (the "EEOC administrative charge").

9. On October 2, 2024, the EEOC issued a Notice of Right to Sue Letter.

**Factual Allegations**

10. In August 2021, then-Boston Mayoral candidate Defendant Wu began publicly announcing her intention to implement a Covid-19 vaccine mandate, requiring City of Boston employees to submit to Covid-19 vaccination or risk termination of employment for refusing to do so (the "Covid-19 vaccine mandate").

11. Cottone did not support the Covid-19 vaccine mandate because believed it to be unconstitutional and because it was against her firmly held religious beliefs.

12. As a direct result of the Covid-19 vaccine mandate, Cottone and other City of Boston employees created a group called "Boston First Responders United," whose objective was to assist Boston employees in drafting and submitting religious exemptions in objection to the Covid-19 vaccine mandate.

13. At all times relevant to this matter, Boston First Responders United had a substantial participant base.

14. As President of Boston First Responders United, Cottone would regularly send group emails to City of Boston employees.

15. Cottone's direct supervisor, Captain Darrin Greely ("Greely") acknowledged her position opposing the Covid-19 vaccine mandate and made negative comments to her about it on a regular basis.

16. In early December 2021, Cottone wrote on the windows of her personal vehicle: "No Vax Mandate, No Vax Passport."

17. When Greely saw what Cottone had written on her vehicle, he demanded that she move it off the public roadway and park it behind the police station.

18. Greely also told Cottone on several occasions in the presence of others that she was "stupid for not taking the vaccine" or words to that effect.

19. On December 22, 2021, Greely wrote in a report: "Sgt. Cottone is also the leader of a first responders' group that is opposed to the vaccine mandate. She has been very vocal to all officers citywide and at roll calls."

20. Beginning in early 2022, Cottone and members of Boston First Responders United began protesting regularly at Mayor Wu's personal resident in Rosindale, Massachusetts.

21. On January 2, 2022, Cottone filed the MCAD administrative charge for religious discrimination.

22. On March 4, 2022, Mayor Wu appeared on the Dan Rea radio show and referred to Boston First Responders United as a "right wing extremist group."

23. During the radio show, Cottone called in to speak to Mayor Wu and she acknowledged that she knew Cottone and had observed her protesting at Mayor Wu's personal residence.

24. Mayor Wu also chided Cottone for protesting too early in the morning stating:

    **Come to City Hall, come on the weekends, during the day . . . Come later in the day . . . twelve hours available for all the drum banging and whistling and shouting horrible things on megaphones that you all do . . . Fine . . . But, let my neighbors and my family and everyone across the City have that precious sleep time.**

25. Cottone later learned that Mayor's Wu's administration had targeted her and other Covid-19 vaccine protesters as "vocal critics" of Mayor in an email sent to the BPD.

26. In April 2022, Cotton received a notice to appear before a magistrate judge in a criminal complaint for disturbing the peace at a protest on April 1, 2022 at Defendant Wu's personal residence in which Cottone was alleged to have used a bull horn in violation of a city noise ordinance.

27. Defendant City of Boston elected to charge Cottone with a crime for disturbing the peace as opposed to a civil violation, which was ultimately dismissed for lack of probable cause.

28. Furthermore, there were other protesters who used a bull horn at these protests, however, upon information and belief, Cottone was the only protester charged with a crime.

29. As a result of the criminal charge, Cottone was forced to hire an attorney at a significant expense.

30. Cottone later learned that the ordinance under which she was charged precludes criminal and court penalties.

31. Cottone also learned that no police officer ever witnessed her using a bull horn, but rather, someone heard a voice that sounded like hers.

32. On March 13, 2023, the Defendant City of Boston terminated Cottone's employment allegedly for violation of BPD rules.

33. However, there are dozens of examples of BPD officers who have committed much more egregious infractions than Cottone, but whom only received a slap on the wrist.

34. Defendants' actionable conduct complained of herein proximately caused Cottone to suffer grave and substantial pecuniary damages, including lost wages, fringe benefits, vacation pay, as well as other pecuniary damages, now, and in the future.

35. Defendants' actionable conduct complained of herein forced Cottone to suffer substantial compensatory damages, including personal emotional pain, personal suffering, personal inconvenience and discomfort, mental anguish, emotional distress, loss of enjoyment of life, humiliation, embarrassment, fear and discomfort triggered by suffering a loss of income, fear regarding Cottone ability to find new suitable employment, anguish, frustration, and other severe non-pecuniary losses, now, and in the future, as well as future pecuniary losses.

36. The conduct of each Defendant warrants the imposition of statutory punitive or exemplary damages, because Defendants intentionally and maliciously and without justification or excuse subjected Cottone to discriminatory terms and conditions of employment based on her and religion, and illegally retaliated against Cottone for exercising her first amendment rights, thereby demonstrating each Defendants' reckless and callous indifference to Cottone's right to work in an environment free from unlawful discrimination, and demonstrating each Defendants' malice or ill will.

37. Defendants stand jointly and severally liable to Cottone for his damages resulting from the Defendants' illegal and wrongful actions complained of herein.

## CLAIMS AGAINST DEFENDANT CITY OF BOSTON

### COUNT I
### RELIGIOUS DISCRIMINATION
### VIOLATION OF 42 U.S.C. § 2000e-2(a)

38. Plaintiff hereby incorporates by reference paragraphs 1-37 of this Complaint as though fully set forth herein.

39. Cottone refused to take the COVID vaccine due to a sincerely held religious belief.

40. Cottone communicated to her employer that she would not take the COVID vaccine due to a sincerely held religious belief.

41. Defendant City of Boston subjected Cottone to multiple adverse employment actions because of her sincerely held religious belief in violation of 42 U.S.C. § 2000e-2(a) and as a direct and proximate result of such illegal conduct, Plaintiff has suffered grave and substantial damages, wherefore Defendant stands liable to Plaintiff for the damages more fully alleged in paragraphs 34-36 above.

## COUNT II
## RELIGIOUS DISCRIMINATION
## VIOLATION OF MASS. GEN. LAWS c. 151B

42. Plaintiff hereby incorporates by reference paragraphs 1-41 of this Complaint as though fully set forth herein.

43. Cottone refused to take the COVID vaccine due to a sincerely held religious belief.

44. Cottone communicated to her employer that she would not take the COVID vaccine due to a sincerely held religious belief.

45. Defendant City of Boston subjected Cottone to multiple adverse employment actions because of her sincerely held religious belief in violation of Mass. Gen. Laws. C. 151B and as a direct and proximate result of such illegal conduct, Plaintiff has suffered grave and substantial damages, wherefore Defendant stands liable to Plaintiff for the damages more fully alleged in paragraphs 34-36 above.

## COUNT III
## RETALIATORY DISCHARGE
## VIOLATION OF 42 U.S.C. § 2000e-3(a)

46. Plaintiff hereby incorporates by reference paragraphs 1-45 of this Complaint as though fully set forth herein.

47. On January 2, 2022, Cottone filed the MCAD administrative charge alleging religious discrimination.

48. In April 2022, Defendant City of Boston charged Cottone with a bogus crime for violating a noise ordinance that was ultimately dismissed for lack of probable cause.

49. Cottone was the only protester who was charged with violating the noise ordinance.

50. On March 13, 2023, the Defendant City of Boston terminated Cottone's employment for violating departmental rules.

51. However, there are dozens of examples of BPD officers who have committed much more egregious infractions than Cottone, but whom only received a slap on the wrist.

52. Despite Cottone's performance of her assigned duties in an exemplary and professional manner at all times during the course of her employment with Defendant, because she participated in protected conduct by filing an MCAD administrative charge, Defendant unlawfully terminated Cottone's valuable employment in violation of 42 U.S.C. § 2000e-3(a), and as a direct and proximate result of such illegal conduct, Cottone has suffered grave and substantial damages, wherefore Defendants stands joint and severally liable to Cottone for the damages more fully alleged in paragraphs 34-36 above.

## COUNT IV
## RETALIATORY DISCHARGE
## VIOLATION OF MASS. GEN. LAWS c. 151B

53. Plaintiff hereby incorporates by reference paragraphs 1-52 of this Complaint as though fully set forth herein.

54. On January 2, 2022, Cottone filed the MCAD administrative charge alleging religious discrimination.

55. In April 2022, Defendant City of Boston charged Cottone with a bogus crime for violating a noise ordinance that was ultimately dismissed for lack of probable cause.

56. Cottone was the only protester who was charged with violating the noise ordinance.

57. On March 13, 2023, the Defendant City of Boston terminated Cottone's employment for violating departmental rules.

58. However, there are dozens of examples of Boston police officers who have committed much worse infractions than Cottone, but whom only received a slap on the wrist.

59. Despite Cottone's performance of her assigned duties in an exemplary and professional manner at all times during the course of her employment with Defendant, because she participated in protected conduct by filing an MCAD administrative charge, Defendant unlawfully terminated Cottone's valuable employment in violation of Mass. Gen. Laws c. 151B, and as a direct and proximate result of such illegal conduct, Cottone has suffered grave and substantial damages, wherefore Defendants stands joint and severally liable to Cottone for the damages more fully alleged in paragraphs 34-36 above.

## COUNT V
## FIRST AMENDMENT RETALIATION
## VIOLATION OF 42 U.S.C. § 1983

60. Plaintiff hereby incorporates by reference paragraphs 1-59 of this Complaint as though fully set forth herein.

61. At all relevant times to this matter, Cottone was employed by a public employer.

62. On many occasions, Cottone expressed opinions concerning and protested about matters of a public concern — the Covid 19 vaccine mandate.

63. On many occasions, Cottone expressed opinions about the Covid 19 vaccine mandate as a private person outside of the workplace.

64. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not identify herself as a police officer.

65. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not identify herself as a member of the Boston Police Department.

66. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not identify herself as an employee of the City of Boston.

67. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not reference any matters pertaining to her workplace, supervisors or co-workers.

68. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not reference any matters pertaining to her position as a police officer, the BPD or the City of Boston.

69. By protesting the Covid 19 vaccine mandate, Cottone was speaking as a citizen on matters of public concern.

70. The protesting of the Covid 19 vaccine mandate is political speech protected under the First Amendment to the United States Constitution.

71. No BPD police officer ever complained to the BPD or the City of Boston about Cottone's position against the Covid 19 vaccine mandate.

72. No BPD police officer ever refused to work with Cottone or requested that they not be assigned to work with her because of her position against the Covid 19 vaccine mandate.

73. No City of Boston employee ever complained to the BPD or to the City of Boston about Cottone's position against the Covid 19 vaccine mandate.

74. No member of the public ever complained to the BPD or the City of Boston about Cottone's position against the Covid 19 vaccine mandate.

75. On March 13, 2023, the City of Boston, terminated Cottone's employment by a letter issued by BPD Commissioner Cox ("Cox").

76. Cottone's speech was a substantial or motivating factor in the City of Boston's decision to terminate her.

77. Because there were no complaints by any police officers, City of Boston employees or members of the public about Cottone's position against the Covid-19 mandate in which Cottone commented upon matters of public concern, the efficiency of the public services the City of Boston performs through the BPD — preventing crime, protecting and serving the community, and upholding the laws of the city, state, and country — was not disrupted in any way.

78. Accordingly, Cottone's speech outweighed any interest that the City of Boston would have in preventing unnecessary disruptions and inefficiencies in the workplace and, therefore, the City of Boston could not have an adequate justification for terminating Cottone.

79. Cox, as the BPD Commissioner, is the executive head of the BPD and is responsible for the management, planning, direction, and control of the BPD.

80. At all times relevant to this matter, the disciplinary process at the BPD is that police officers cannot be disciplined, including terminated, unless the BPD Commissioner ratifies it.

81. When the City of Boston terminated Cottone, it was acting under the color of law within the meaning of 42 U.S.C. § 1983.

82. The reasons the City of Boston has provided for terminating Cottone – violation of departmental rules – is not believable and, therefore, pretext because there have been many other City of Boston police officer who have committed worse infractions, but whom received little to no discipline.

83. And because Cottone's injury was caused by a person with final policymaking authority – Cox, who was the Commissioner of the BPD at the time – the unconstitutional conduct occurred pursuant to an official policy or custom and, therefore, the City of Boston is liable.

84. Defendants conduct as described herein constitutes a violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff has been harmed thereby.

## CLAIMS AGAINST DEFENDANT MICHELLE WU

### COUNT VI
### VIOLATION OF 42 U.S.C. § 1983
### FIRST AMENDMENT RETALIATION

85. Plaintiff hereby incorporates by reference paragraphs 1-84 of this Complaint as though fully set forth herein.

86. At all relevant times to this matter, Cottone was employed by a public employer.

87. On many occasions, Cottone expressed opinions concerning and protested about matters of a public concern — the Covid 19 vaccine mandate.

88. On many occasions, Cottone expressed opinions about the Covid 19 vaccine mandate as a private person outside of the workplace.

89. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not identify herself as a police officer.

90. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not identify herself as a member of the Boston Police Department.

91. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not identify herself as an employee of the City of Boston.

92. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not reference any matters pertaining to her workplace, supervisors or co-workers.

93. While speaking and protesting against the Covid 19 vaccine mandate as a private person outside of the workplace, Cottone did not reference any matters pertaining to her position as a police officer, the BPD or the City of Boston.

94. By protesting the Covid 19 vaccine mandate, Cottone was speaking as a citizen on matters of public concern.

95. The protesting of the Covid 19 vaccine mandate is political speech protected under the First Amendment to the United States Constitution.

96. No BPD police officer ever complained to the BPD or the City of Boston about Cottone's position against the Covid 19 vaccine mandate.

97. No BPD police officer ever refused to work with Cottone or requested that they not be assigned to work with her because of her position against the Covid 19 vaccine mandate.

98. No City of Boston employee ever complained to the BPD or to the City of Boston about Cottone's position against the Covid 19 vaccine mandate.

99. No member of the public ever complained to the BPD or the City of Boston about Cottone's position against the Covid 19 vaccine mandate.

100. On March 13, 2023, the City of Boston, terminated Cottone's employment by a letter issued by BPD Commissioner Cox ("Cox").

101. Cottone's speech was a substantial or motivating factor in the City of Boston's decision to terminate her.

102. Because there were no complaints by any police officers, City of Boston employees or members of the public about Cottone's position against the Covid-19 mandate in which Cottone commented upon matters of public concern, the efficiency of the public services the City of Boston performs through the BPD — preventing crime, protecting and serving the community, and upholding the laws of the city, state, and country — was not disrupted in any way.

103. Accordingly, Cottone's speech outweighed any interest that the City of Boston would have in preventing unnecessary disruptions and inefficiencies in the workplace and, therefore, the City of Boston could not have an adequate justification for terminating Cottone.

104. Cox, as the BPD Commissioner, is the executive head of the BPD and is responsible for the management, planning, direction, and control of the BPD.

105. At all times relevant to this matter, the disciplinary process at the BPD is that police officers cannot be disciplined, including terminated, unless the BPD Commissioner ratifies it.

106. When the City of Boston terminated Cottone, it was acting under the color of law within the meaning of 42 U.S.C. § 1983.

107. The reasons the City of Boston has provided for terminating Cottone – violation of departmental rules – is not believable and, therefore, pretext because there have been many other City of Boston police officer who have committed worse infractions, but whom received little to no discipline.

108. And because Cottone's injury was caused by a person with final policymaking authority – Cox, who was the Commissioner of the BPD at the time – the unconstitutional conduct occurred pursuant to an official policy or custom and, therefore, the City of Boston is liable.

109. Defendants conduct as described herein constitutes a violation of 42 U.S.C. § 1983.

110. When the City of Boston terminated Cottone, it was acting under the color of law within the meaning of 42 U.S.C. § 1983.

111. On March 4, 2022, Mayor Wu appeared on the Dan Rea radio show and referred to Boston First Responders United as a "right wing extremist group."

112. During the radio show, Cottone called in and Mayor Wu acknowledge that she knew Cottone and had observed her protesting at her personal residence.

113. Mayor Wu also chided Cottone for protesting too early in the morning stating.

114. Mayor Wu's administration sent an email to the BPD with a list of Defendant Wu's vocal critics that included Cottone and other Covid-19 vaccine protesters.

115. Prior to terminating Cottone on March 13, 2023, Cox and Mayor Wu were aware that Cottone's anti-Covid-19 mandate position constituted protected speech under the First Amendment to the United States Constitution.

116. It was not objectively reasonable for Defendant Wu to believe that she and Defendant City of Boston's unconstitutional, wrongful, tortious and negligent course of conduct concerning Cottone was legally permissible in light of legal rules in existence at the time of the conduct.

117. It was not objectively reasonable for Defendant Wu to believe that her actions were permissible under law.

118. Defendant Wu is not entitled to immunity or qualified immunity regarding her unconstitutional, wrongful, tortious and negligent course of conduct concerning Cottone complained of herein while acting under color of state law, because her conduct was clearly prohibited by federal law at the time, and it was clearly prohibited by reference to common standards of fairness, fair play and due process, and it was objectively and legally unreasonable in light of the legal rules clearly established at the time of the conduct.

119. Defendant Wu stand personally liable to Cottone pursuant to 42 U.S.C. § 1983 based upon her personal involvement and direct participation in the unconstitutional course of conduct concerning Cottone complained of herein while acting under color of law and under pretense of law.

120. Defendant's conduct as described herein constitutes a violation of 42 U.S.C. § 1983.

121. The public interest has been harmed by the Defendant's unlawful actions against Cottone.

    WHEREFORE, Plaintiff has been harmed thereby.

**PRAYER FOR RELIEF**

      WHEREFORE, Plaintiff SHANA COTTONE prays that this Honorable Court grant her the following relief:

1. An order directing Defendant City of Boston to place Plaintiff in the position Plaintiff would have occupied but for Defendants' unlawful treatment of Plaintiff, and make Plaintiff whole for all earnings and benefits Plaintiff would have received but for Defendants' unlawful treatment, including, but not limited to, lost wages, employment benefits, including an order requiring that Defendant reinstate Plaintiff to an appropriate position without further violation of his rights or retaliation;

2. A finding that the Defendants stands joint and severally liable to make Plaintiff whole for all damages suffered as a result of the wrongful acts and omissions alleged in each Count herein, including inter alia damages for personal emotional pain, personal suffering, personal inconvenience and discomfort, mental anguish, extreme and severe emotional distress, loss of enjoyment of life, humiliation, embarrassment, fear and discomfort triggered by suffering a damage to his professional and personal reputations, anguish, frustration, and other severe non-pecuniary losses, now, and in the future, as well as future pecuniary losses;

3. A finding that the Defendants stand joint and severally liable to Plaintiff for the imposition of statutory exemplary or punitive damages, because Defendants intentionally and maliciously and without justification or excuse illegally discriminated against Plaintiff on the basis of his religion and disability and retaliated against him for engaging in protected conduct, thereby demonstrating Defendants' reckless and callous indifference to Plaintiff's right to work in an environment free from unlawful discrimination, and demonstrating Defendants' malice or ill will;

4. An order declaring that the acts and practices complained of herein are in violation of 42 U.S.C. § 1983; Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e et seq.; and Mass. Gen. Laws c. 151B.

5. A permanent injunction against Defendants prohibiting future acts of discrimination against Plaintiff and similarly-situated employees;

6. An order enjoining and permanently restraining Defendants from further violations of the 42 U.S.C. § 1983; Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e et seq.; and Mass. Gen. Laws c. 151B.

7. An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

8. A finding that the doctrine of qualified immunity is inapplicable to Defendants Wu and that she is personally liable to Cottone;

9. A finding that Defendants stand joint and severally liable to Plaintiff for an award of her reasonable attorneys' fees, litigation costs and other costs of this action, together with a post-trial hearing to determine the amount of Plaintiff's reasonable attorneys' fees taxable to Defendants, along with a determination of Plaintiff's litigation costs and expenses taxable to Defendants;

10. An appropriate award of pre-judgment interest at the state rate of twelve percent (12%) per annum on all sums recovered; and

11. Such other and further relief as this Court deems just and proper.

### Demand for Jury Trial

Plaintiff claims trial by jury on all issues so triable.

        Plaintiff
        SHANA COTTONE
        By His Attorney,

        /s/Mark P. Gagliardi
        Mark P. Gagliardi (MA BBO#: 657622)

        LAW OFFICE OF MARK P. GAGLIARDI
        56 Pine Street, Suite 200
        Providence, RI 02903
        (401) 277-2030 (office)
        (401) 487-6666 (cell)
        (401) 274-2780 (fax)
        mark@markgagliardilaw.net

Date: December 31, 2024