UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NO. 1:24-cv-13233-GAO

SHANA COTTONE,

        Plaintiff,

v.

CITY OF BOSTON, by and Through Its Treasurer, Ashley Groffenberger, and MICHELLE WU,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
CITY OF BOSTON'S MOTION TO DISMISS**

Defendant City of Boston ("the City") respectfully moves this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Counts I through IV of Plaintiff Shana Cottone's Complaint ("Complaint") against it.

**FACTUAL ALLEGATIONS**[1]

According to the Amended Complaint, in August 2021, Mayor Wu, then a Boston mayoral candidate, began publicly announcing her intention to implement a COVID-19 vaccine mandate, requiring City employees to submit to COVID-19 vaccination or risk termination of employment for refusing to do so. Complaint, ¶ 18. The Complaint alleges that Plaintiff "holds a sincerely-held religious belief rooted in her Christian faith, which she sincerely believes prevents her from receiving man-made vaccines like the COVID-19 vaccine." Id. at ¶ 19. On January 14,

---

[1] For the limited purposes of the instant motion, the City accepts the nonconclusory facts alleged in the Complaint as true.

2022, Plaintiff filed a seventeen-page request for a religious exemption informing the City in writing that receiving the COVID-19 vaccine conflicts with her sincerely-held religious beliefs. Id. at ¶ 20. Plaintiff became a vocal leader and president of the advocacy group called "Boston First Responders United," which assisted City of Boston employees in submitting religious exemptions to the COVID-19 vaccine mandate. Id. at ¶ 21. The Complaint alleges that Boston First Responders United had a substantial participant base, and that Plaintiff would regularly send group emails to City employees. Id. at ¶¶ 22–23.

The Complaint alleges that Plaintiff's direct supervisor, Captain Darrin Greeley "acknowledged" Plaintiff's opposition to the COVID-19 vaccine mandate, exhibited hostility toward her protected activities, and criticized her advocacy efforts and religious beliefs. Id. at ¶ 24. In early December 2021, Plaintiff wrote on the windows of her personal vehicle: "No Vax Mandate, No Vax Passport." Id. at ¶ 25. According to the Complaint, when Captain Greeley saw what Cottone had written on her vehicle, he demanded that she move it off the public roadway and park it behind the police station and that she was being "political." Id. at ¶ 26. The Complaint also alleges that Captain Greeley told Plaintiff on several occasions in the presence of others that she was "stupid for not taking the vaccine" or words to that effect. Id. at ¶ 28. On December 22, 2021, Captain Greeley wrote in a report: "Sgt. Cottone is also the leader of a first responders' group that is opposed to the vaccine mandate. She has been very vocal to all officers citywide and at roll calls. She continuously holds officers over at roll call and advocates against the vaccine." Id. at ¶ 30. According to the Complaint, beginning in early 2022, Plaintiff and members of Boston First Responders United began protesting regularly at Mayor Wu's personal residence. Id. at ¶ 31.

The Complaint alleges that on March 4, 2022, Mayor Wu appeared on the Dan Rea radio show and referred to Boston First Responders United as a "right wing extremist group." Id. at ¶ 35. During the radio show, Plaintiff called in to speak to Mayor Wu and she acknowledged that she knew Plaintiff and had observed her protesting at Mayor Wu's personal residence. Id. at ¶ 36. The Complaint also alleges that Mayor Wu "chided" Plaintiff for protesting too early in the morning, stating: "Come to City Hall, come on the weekends, during the day . . . Come later in the day . . . twelve hours available for all the drum banging and whistling and shouting horrible things on megaphones that you all do . . . Fine . . . But, let my neighbors and my family and everyone across the City have that precious sleep time." Id. at ¶ 37. According to the Complaint, Plaintiff learned that Mayor Wu's administration had "targeted" her and other COVID-19 vaccine protesters as "vocal critics" of the mayor in an email sent to BPD, which the Complaint describes as a "so-called enemies list – consisting of fifteen individuals, including Cottone." Id. at ¶ 38.

The Complaint alleges that in April 2022, Plaintiff received a notice to appear before a magistrate judge in a criminal complaint for disturbing the peace at a protest on April 1, 2022, at Mayor Wu's personal residence in which Plaintiff was alleged to have used a bull horn in violation of a city noise ordinance. Id. at ¶ 39. The Complaint alleges that the City elected to charge Plaintiff with a crime for disturbing the peace as opposed to a civil violation, which was ultimately dismissed for lack of probable cause. Id. at ¶ 40. The Complaint further alleges that there were other protesters who used a bull horn at these protests, but on information and belief, Plaintiff was the only protester charged with a crime. Id. at ¶ 41. As a result of the criminal charge, Plaintiff was forced to hire an attorney at significant expense. Id. at ¶ 42. Cottone later discovered that Greeley had spoken with Mayor Wu's driver, Sgt. Det. Cary Chin and that Chin

instructed Greeley through Wu to pursue a criminal complaint against Cottone for "reckless driving" and "disturbing the peace." Id. at ¶ 43. As a result of Chin's directive through Defendant Wu, Greely directed Sgt. Stephen O'Brien to effectuate the criminal charges against Cottone. Id. at ¶ 44. Cottone also learned that Sgt. O'Brien testified at a hearing that he never observed Cottone using a bull horn, but rather, he only heard a voice that sounded like hers. Id. at ¶ 47. O'Brien also testified that the new ordinance called the "Targeted Residential Picketing Ordinance" precluded any criminal penalties and only provided for civil fines. Id. at ¶ 48.

In 2021 and 2022, BPD opened six Internal Affairs investigations for a range of alleged infractions, and her employment was terminated on March 13, 2023. Id. at ¶¶ 50–51. The Complaint alleges, however, that "dozens of other officers who committed significantly more severe offenses have consistently received far less severe disciplinary actions, highlighting the retaliatory and pretextual nature of the charges against her." Id. at ¶¶ 52–55. The Complaint alleges that "[e]mails obtained through public records show Defendant Wu's senior advisors directly urging severe disciplinary actions against Cottone, further underscoring discriminatory and retaliatory animus linked directly to her protected advocacy and speech." Id. at ¶ 49.

The Complaint alleges that on January 2, 2022, Plaintiff filed the MCAD administrative charge for religious discrimination. Id. at ¶ 32. The Complaint alleges that Plaintiff was very vocal in the workplace about the MCAD complaint she had initiated, discussing it openly with her coworkers. Id. at ¶ 33. The charge of discrimination includes some of the same allegations that she makes in this case, such as her opposition to the COVID-19 vaccine and her

involvement in "Boston First Responders United." See Exhibit A, Charge of Discrimination.[2]

Plaintiff's charge of discrimination also contained the following additional allegations:

5. On December 23, 2021, while on work duty, I videotaped Mayor Wu during an event in which another Police Officer asked Wu if she would have sympathy for pregnant employees who did not want to receive the vaccine. During the incident, Deputy Superintendent Lanita Cullinane, who is superior to me, informed me to stop recording. I later provided the video footage to a friend, who posted the video on the internet, resulting in the video receiving millions of views. To my knowledge, Respondent is aware that I made the recording of the viral video.

6. On December 21, 2021, as my Supervisor was running late, I conducted a "roll call" and provided work assignments to Police Officers within my work district, which is the same district as the residence of Mayor Wu, as security outside her home, as is customary for all Boston Mayors. However, while I was providing the assignments that day, I accidentally forgot to assign an Officer to Wu's residence. Sergeant Steve O'Brien, a coworker, noticed this and informed me that I did not assign an Officer to Wu's residence. In response, I jokingly stated, "What are we going to do? Put an unvaccinated cop there who she will fire next week? Upon noticing the oversight, Police Officers were assigned to staff the Mayor's house. Shortly after I made this statement jokingly, O'Brien wrongfully reported to Captain Greeley that I had purposely disobeyed orders by not assigning an Officer to Mayor Wu's residence. I believe O'Brien's actions were motivated by discriminatory animus against my religious beliefs and my related activism against the vaccine mandate.

7. On January 4, 2022, I was assigned to patrol Mayor Wu's residence, along with a subordinate Officer, and sat in my police vehicle down the road from the residence in case my subordinate needed me. During the assignment, five protestors were peacefully protesting against the vaccine mandate across from the residence. During the protest, as a few neighbors stopped to talk to the protestors, my subordinate called me on my handheld receiver and I stated, "This is what democracy looks like." Moreover, I told her not to turn on her bodycam video, as the protest incident was peaceful and Respondent only

---

[2] Inclusion of Plaintiff's MCAD Charge of Discrimination does not convert this motion to dismiss into a motion for summary judgment because she was required to file the charge before filing this civil suit. See Posada v. ACP Facility Servs., Inc., 389 F. Supp. 3d 149, 158 (D. Mass. 2019). "While a court deciding a Rule 12(b)(6) motion is normally constrained to consider only the plaintiff's complaint, a court may nonetheless take into account a document whose contents are linked to the complaint[,] such as a charge of discrimination filed with the EEOC, without converting the motion into a summary judgment request." Rodriguez v. Henry Schein, Inc., 813 F. Supp. 2d 257, 262 (D.P.R. 2011) (internal citations omitted).

      requires Officers to turn on bodycam video when involved in violent or criminal incidents. I remained on scene monitoring the situation until the Mayor left her residence.

8. On January 8, 2022, Respondent arrived at my home and took away my police badge and gun, providing me a letter from the Internal Affairs Department, which stated that I was under investigation due to charges made against me. Moreover, I was put on paid administrative leave, pending a March 10, 2022, hearing.

9. On January 10, 2022, I became aware that as a result of reports by other Officers, Respondent was investigating me for "unreasonable judgment" and "unbecoming conduct" in relation to the incidents of December 23, 2021, December 21, 2021, and January 4, 2022. I believe that through these actions, Respondent has targeted me due to my sincerely held religious beliefs and related vocal activism against Respondent's vaccine requirements.

10. On January 14, 2022, as my sincerely held religious beliefs prevent me from receiving the COVID-19 vaccine, I submitted a religious exemption request to Respondent. However, as the City's vaccine mandate has recently been challenged by a court judge, review of my exemption request has been paused and I have not received a response.

11. On January 15, 2022, while off from work duty, I attempted to enter two restaurant establishments without receiving the COVID-19 vaccine. However, due to my lack of vaccination status, both restaurants refused to serve me and called the Boston Police to the locations. During both incidents, the Officers that were called to each location recognized me as someone who has been known to be vocal against the vaccine mandate due to sincerely held religious beliefs. To my knowledge, these Officers reported these incidents to Respondent, and after these incidents, I received notice that Respondent was also investigating my participation in these incidents.

See Exhibit A. The Complaint alleges that on October 4, 2024, the EEOC issued a Notice of Right to Sue Letter. Id. at ¶ 9.

## ARGUMENT

### I. STANDARD OF REVIEW.

A complaint or count therein must be dismissed if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff, it fails to state a claim upon

6

which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To support a claim, the plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element." Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. See id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007)). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true, even if doubtful in fact. Twombly, 550 U.S. at 555. The court need not credit "subjective characterizations, optimistic predictions, or problematic suppositions." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). "Empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." Id. (internal quotation omitted).

## II. THE RELIGIOUS DISCRIMINATION CLAIMS FAIL BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT THE SUPPOSED ADVERSE EMPLOYMENT ACTIONS WERE TAKEN AS A RESULT OF PLAINTIFF'S RELIGIOUS BELIEFS.

"[T]o establish a prima facie case of religious discrimination, the employee must show that: (1) a bona fide religious practice conflicts with an employment requirement; (2) that he or she brought the practice to the [employer's] attention; and (3) that the religious practice was the basis for an adverse employment decision." Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc., 673 F.3d 1, 8 (1st Cir. 2012). To qualify as a bona fide belief, the plaintiff must show "both that the belief or practice is religious and that it is sincerely held." E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002). The framework for analyzing religious discrimination claims under G.L. c. 151B is similar to that for Title VII. See Mekonnen v. OTG Mgmt., LLC, 394 F. Supp. 3d 134, 157 (D. Mass. 2019).

"[W]hen assessing a Title VII discrimination claim, the proper focus is on the protected characteristic of the individual plaintiff." Frith v. Whole Foods Mkt., Inc., 38 F.4th 263, 271 (1st Cir. 2022). "In other words, to constitute unlawful . . . discrimination under Title VII, an employment action must have been taken 'because of' the [protected characteristic] of the individual plaintiff." Id. See also E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 772 (2015) (disparate treatment analysis for religious discrimination claims requires plaintiff to show that employer took adverse employment decision "because of . . . such individual's religion (which includes his religious practice)"); Sanchez-Rodriguez, 673 F.3d at 8 (employee must show that "the [employee's] religious practice was the basis for an adverse employment decision").

Plaintiff's religious discrimination claim suffers from multiple defects. First, the complaint does not identify a sincerely held religious belief or practice. Union Independiente, 279 F.3d at 56. Instead, the complaint alleges in a completely conclusory manner that Plaintiff "holds a sincerely-held religious belief rooted in her Christian faith, which she sincerely believes prevents her from receiving man-made vaccines like the COVID-19 vaccine." Id. at ¶ 19. It provides no details about what Plaintiff's religious beliefs consist of, or why vaccination violates those beliefs. For this reason alone, Plaintiff's religious discrimination claim should be dismissed. Cf. Robert v. Raytheon Tech Corp., 731 F. Supp. 3d 198, 205 (D. Mass. 2024) (dismissing religious discrimination claim where plaintiff alleged that employer's "vaccination and testing requirements contravened his sincerely held religious beliefs but did not explain what religious belief he held or how that belief was sincere").

Second, it is important to emphasize that Plaintiff's alleged religious beliefs did not "conflict[] with an employment requirement." Sanchez-Rodriguez, 673 F.3d at 8. Not only did

8

Plaintiff's MCAD charge of discrimination allege that the religious exemption process was paused in January 2022 because of litigation, Exhibit A, at ¶ 10, but this Court may also take judicial notice of the fact that Plaintiff was never required to take the COVID-19 vaccine as a condition of her employment with the City. In <u>Boston Firefighters Union, Local 718, Int'l Ass'n of Fire Fighters, AFL-CIO v. Boston</u>, 491 Mass. 556, 557-561 (2023), the Supreme Judicial Court described in detail the development of the City's COVID-19 vaccination policies in 2021 and 2022. In August 2021, the City announced a policy requiring all City employees either to receive the COVID-19 vaccination or submit to weekly testing. <u>Id.</u> at 559. This policy remained in place through 2022 and early 2023, as an amended policy that would have mandated vaccination for City employees was stayed by a single justice of the Appeals Court pending resolution of the matter in <u>Boston Firefighters Union</u>. <u>Id</u>. at 560–61.

      The complaint does not plausibly allege that any adverse employment action taken against her was "because of" her religion. Rather, the complaint indicates that any adverse actions were "because of" her activity—specifically, her multiple violations of Boston police rules and City ordinances. The complaint alleges that Plaintiff was charged with disturbing the peace "at a protest on April 1, 2022 at Defendant Wu's personal residence in which [Plaintiff] was alleged to have used a bull horn in violation of a city noise ordinance." Complaint, at ¶ 39. Plaintiff was then terminated "allegedly for violation of BPD rules." <u>Id.</u> at ¶¶ 50–51. Both the Complaint and the MCAD Charge of Discrimination acknowledge that Plaintiff was involved in multiple incidents in 2021 and 2022 that resulted in six simultaneous internal affairs investigations. <u>Id.</u> at ¶¶ 50–51; Exhibit A. In sum, the complaint fails to allege that Plaintiff's religious beliefs were "the basis for an adverse employment decision." <u>Sanchez-Rodriguez</u>, 673 F.3d at 8. The religious discrimination claims should be dismissed. <u>Cf</u>. <u>Robert</u>, 731 F. Supp. 3d

9

at 205 (religious discrimination claim subject to dismissal where plaintiff acknowledged that his refusal to comply with employer's testing requirements, not his religion, was reason for his termination).

**III.   THE RETALIATION CLAIMS FAIL BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THE ADVERSE EMPLOYMENT ACTIONS WERE CAUSALLY CONNECTED TO THE FILING OF THE MCAD CHARGE OF DISCRIMINATION.**

Plaintiff asserts federal and state retaliation claims against the City. "To establish a prima facie case of retaliation under Chapter 151B and Title VII, [Plaintiff] must establish that: 1) [s]he engaged in a statutorily protected activity, 2) [s]he suffered an adverse employment action, and 3) the protected conduct and adverse employment action are causally connected." See Toussaint v. Brigham & Women's Hosp., Inc., 166 F. Supp. 3d 110, 117–18 (D. Mass. 2015) (quoting Pina v. Children's Place, 740 F.3d 785, 801 (1st Cir. 2014)).

The complaint alleges that the protected conduct she participated in was "fil[ing] the MCAD administrative charge alleging religious discrimination" in January 2022. Complaint, at ¶ 32. Although she may have communicated with the MCAD in January 2022, the charge of administration was not finalized at the MCAD until March 2022, and it was not served on the City until August 2022. See Exhibit A. This documentary evidence trumps the allegation in the complaint. See Yacubian v. United States, 750 F.3d 100, 108 (1st Cir. 2014) ("[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations") (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 229 n.1 (1st Cir. 2013)); Lowenstern v. Residential Credit Sols., No. CA 11-11760-MLW, 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013) ("When such documents contradict an allegation in the complaint, the document trumps the allegation.") (citing Clorox Co. P.R. v. Proctor & Gamble Consumer Co., 228 F.3d 24, 32 (1st Cir. 2000)).

The exact date that the MCAD charge of discrimination was filed is significant because the alleged misconduct for which Plaintiff was eventually terminated and the incident that resulted in the criminal charge against her all took place prior to the filing of the MCAD charge. The MCAD Charge of Discrimination indicates that the incidents giving rise to the six internal affairs investigations took place over a short span of time between December 2021 and January 2022. Id. at ¶¶ 50–51; Exhibit A. The bull horn incident and criminal case took place in April 2022. Id. at ¶ 39. Plaintiff's retaliation claims fail because there is no plausible nexus between the alleged adverse employment actions taken against her and her MCAD complaint, which was first received by the City in August 2022. See Amirault v. Malden, 335 F. Supp. 3d 111, 121 (D. Mass. 2018) ("The plaintiff must provide competent evidence that the employer was aware that the plaintiff was engaging in protected activity, since 'one cannot have been motivated to retaliate by something [s]he was unaware of[.]'") (quoting Delaney v. Town of Abington, 890 F.3d 1, 6 (1st Cir. 2018)). See also Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 452 (1st Cir. 2009) ("[I]n assessing pretext, a court's focus must be on the perception of the decisionmaker."). For this reason, the retaliation claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that this Honorable Court dismiss Counts I through IV of Plaintiff's Complaint.

Respectfully submitted,

CITY OF BOSTON

By its attorneys,

Adam Cederbaum
Corporation Counsel


/s/ Randall Maas
Randall Maas BBO# 684832
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
617-635-4042
Randall.Maas@boston.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 1, 2025.

| July 1, 2025 | /s/ *Randall Maas* |
|---|---|
| Date | Randall Maas |