UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | | |
|---|---|---|
| SHANA COTTONE, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | C.A. No. 1:24-cv-13233-GAO |
| | : | |
| CITY OF BOSTON, by and Through | : | |
| Its Treasurer, Ashley Groffenberger; and | : | |
| MICHELLE WU, | : | |
|     Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CITY OF BOSTON'S MOTION TO DISMISS COUNTS I–IV OF THE AMENDED COMPLAINT**

Plaintiff Shana Cottone ("Cottone"), by and through counsel, hereby submits this Memorandum of Law in Opposition to Defendant City of Boston's Motion to Dismiss Counts I-IV of the Amended Complaint (ECF No. 19).

For the reasons stated herein, the Court should deny Defendant's motion.

## INTRODUCTION

Defendant City of Boston's ("the City's") motion to dismiss mischaracterizes both the factual allegations in the Amended Complaint and the applicable legal standards under Rule 12(b)(6). Cottone has pled detailed, non-conclusory facts showing that she was subjected to discrimination and retaliation on the basis of her sincerely-held religious beliefs and in response to her protected activity, including filing a charge of discrimination and engaging in political speech protected under the First Amendment. The City's arguments improperly ask the Court to weigh competing factual narratives and to draw inferences in its favor – tasks reserved for a jury. When the well-pled allegations are accepted as true and reasonable inferences drawn in Cottone's favor, dismissal is unwarranted.

## LEGAL STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). "[The court] may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013) (internal citations omitted). Rather, a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). A plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Courts use a two-step inquiry into plausibility: (1) the court must sift through the allegations in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). See Morales–Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012); and (2) the court must consider whether the factual allegations gives rise to a plausible claim to relief. Id. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc). Importantly, it is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage. Rodríguez-Reyes, 711 F.3d at 54.

## ARGUMENT

**I. PLAINTIFF PLAUSIBLY ALLEGES RELIGIOUS DISCRIMINATION UNDER TITLE VII AND MASS. GEN. LAWS C. 151B (COUNTS I & II)**

The City's primary contention – that Cottone fails to identify a sincerely-held religious belief in conflict with an employment requirement – is contrary to the pleadings. The Amended Complaint alleges that Cottone grounded her refusal to receive a COVID-19 vaccine in specific, detailed tenets of her Christian faith which she alleges prevents her from receiving man-made vaccines like the COVID-19 vaccine (ECF No. 13 ¶ 19) ("[Plaintiff] holds a sincerely-held religious belief rooted in her Christian faith, which she sincerely believes prevents her from receiving man-made vaccines like the COVID-19 vaccine.") (emphasis added). This belief is plainly religious in nature and protected under Title VII and Chapter 151B. See E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 772 (2015) (Title VII defines religion to include "all aspects of religious observance and practice, as well as belief"). Whether the City agrees with Cottone's theological rationale is immaterial; sincerity is a fact-intensive inquiry ill-suited for resolution on a motion to dismiss. See Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002).

The City's assertion that Cottone "was never required" to take the vaccine ignores the plausible allegation that the mandate was adopted, enforced, and used as a basis for harassment, discipline, and eventual termination. The fact that the vaccine mandate's enforcement was enjoined does not insulate the City from liability for actions taken because of Plaintiff's religious opposition to it. See, e.g., Dixon v. Hallmark Cos., 627 F.3d 849, 856 (11th Cir. 2010) (adverse action taken in anticipation of or because of protected conduct is actionable). The Amended Complaint alleges a pattern of retaliatory internal affairs investigations, criminal charges, and selective discipline triggered after Plaintiff sought a religious exemption (ECF No. 13 ¶¶ 20, 24-28, 32, 50-53). At this stage, those allegations suffice.

## II. THE JANUARY 14, 2022 EXEMPTION REQUEST — REFERENCED IN THE AMENDED COMPLAINT — MORE THAN MEETS RULE 12(B)(6)'S PLEADING STANDARD.

To survive dismissal, a Title VII or Chapter 151B religious-discrimination claim must plausibly allege a bona fide religious belief that conflicts with an employment requirement, that the employer was on notice of the conflict, and that the employee was subjected to an adverse action because of it. See Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 15 (1st Cir. 2024). The January 14, 2022 exemption request (a copy of which is attached hereto as Exhibit "A") – referenced in Paragraph 20 of the Amended Complaint – provides detailed, non-conclusory facts establishing each element (ECF No. 13 ¶ 20) ("On January 14, 2022, Cottone filed a seventeen-page request for a religious exemption informing her employer in writing that receiving the COVID-19 vaccine conflicts with her sincerely-held religious beliefs."). In the exemption request, Cottone identified herself as a "follower of Jesus Christ through Christian teachings" (id. at 1), citing specific Biblical passages throughout (e.g., Genesis 1:27, Acts 15:29, Leviticus 17:11) (See Id.). She further explained that, apart from vaccinations administered during her childhood when her mother made all medical decisions on her behalf, she has, as an adult, consistently declined all vaccinations based on her religious beliefs. Cottone wrote:

> I was born in 1985 on Long Island, New York to Annmarie and Dennis Cottone. While both of my parents had been raised in the Catholic faith by their respective families, my mother and father were less adherent as they entered adulthood, which I will elaborate on shortly. From birth, until I turned 18 years old, my mother was responsible for my medical treatment and as such, I received some vaccines that babies and children would "ordinarily" get in secular society. Once I was older, however, I realized that the immune system Jesus gave me and his healing spirit, which I was filled with, was my shield and vaccination was not to be part of my life.

Id. at 2.

Critically, Cottone explained why her Christian religious faith would not permit her to take the City's mandated COVID-19 vaccine, writing: "[t]he Bible states explicitly that vaccination is a sin, so grave in fact, that my soul would be separated from God." (Id. at 9). Cottone specifically put

her employer on notice that her religious beliefs prevented her from taking the COVID-19 vaccine. She wrote:

> I am making this formal request to be exempt from vaccination . . . . Vaccinations are in direct violation of the ways that I understand how my Lord wants me to be protected while I am occupying the body with which He has lent me. He had made it clear to me through the life experiences that I have had, but very importantly, through the Word he has given to his children through the sacred Holy Bible, that I am to refrain from vaccination. Jesus as the eternal healer, was described in Luke 4:40: "At sunset, the people brought to Jesus all who had various kinds of sickness, and laying his hands on each one, he healed them." Jesus did not use any manmade medicines or solutions to heal the sick. By virtue of his Holy Power, Jesus laid his hands upon the ill and they were restored. We see this time and again in the Bible.

Id. at 1-2.

These allegations are far more than the "mere ipse dixit" courts have rejected. They mirror the level of specificity upheld in Agaj v. Boston College, No. 1:24-cv-10884-JEK, 2024 WL 4754380 (D. Mass. Nov. 12, 2024), Passarella v. Aspirus, Inc., 108 F.4th 1005 (7th Cir. 2024), and Ringhofer v. Mayo Clinic Ambulance, 102 F.4th 894 (8th Cir. 2024), where detailed, scripture-based objections were held sufficient to withstand a motion to dismiss – even where plaintiffs also expressed secular concerns.

## III. THE CITY WAS ON CLEAR NOTICE OF COTTONE'S SINCERELY HELD RELIGIOUS BELIEF.

The January 2022 exemption request placed the City on unmistakable notice that its vaccine mandate conflicted with Cottone's sincerely held religious beliefs. The First Circuit has made clear that at the pleading stage, sincerity is a factual issue not to be resolved on a motion to dismiss. See Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002). Given the request's content and the complaint's allegations, Cottone has plausibly alleged that the adverse actions she faced – including administrative leave, targeted investigations, and termination – were "because of" her religion.

## IV. THE COURT MAY CONSIDER PLAINTIFF'S JANUARY 2022 RELIGIOUS EXEMPTION REQUEST WITHOUT CONVERTING THE MOTION TO DISMISS INTO ONE FOR SUMMARY JUDGMENT.

On a Rule 12(b)(6) motion, courts ordinarily limit their review to the complaint's allegations and exhibits. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). However, the First Circuit recognizes "narrow exceptions" allowing consideration of certain extrinsic documents without converting the motion into one for summary judgment: (1) documents whose authenticity is undisputed; (2) official public records; (3) documents central to the plaintiff's claim; and (4) documents sufficiently referred to in the complaint. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson). Cottone's January 14, 2022 religious exemption (Ex. A) request falls squarely within these exceptions. The Amended Complaint specifically alleges that "on January 14, 2022, Cottone filed a seventeen-page request for a religious exemption informing her employer in writing that receiving the COVID-19 vaccine conflicts with her sincerely-held religious beliefs." (ECF No. 13 ¶ 20).[1] Thus, the document is expressly referenced in the pleadings, is central to Cottone's religious discrimination claims, and its authenticity is not in dispute. Therefore, under Freeman, the Court may consider the exemption request in deciding the City's motion without triggering Rule 12(d) conversion.

## V. COTTONE PLAUSIBLY ALLEGES RETALIATION UNDER TITLE VII AND MASS. GEN. LAWS C. 151B (COUNTS III & IV).

Initiating an EEOC/MCAD administrative charge constitutes protected activity within the meaning of the law when the employer knows about it. Title VII's anti-retaliation provision protects both "opposition" and "participation." 42 U.S.C. § 2000e-3(a). The participation clause covers "making a charge, testifying, assisting, or participating in any manner" in the administrative process; the opposition clause protects an employee who reasonably opposes what she believes to be

---

[1] The religious exemption request is actually ten pages, not seventeen pages – this was a simple drafting error by Cottone's counsel.

unlawful discrimination.  Once management is aware that an employee has initiated (or is initiating) an administrative charge, adverse steps taken thereafter can support a retaliation claim.  In <u>Batchelor v. City of Wilson</u>, 747 F.Supp.3d 845 (E.D.N.C. 2024), the court expressly recognized both routes, and confirmed that employer knowledge – not the formal service date – is what matters for pleading causation at 12(b)(6).

In <u>Batchelor</u>, a police sergeant told a command officer on March 22, 2022 that she had filed an EEOC charge about discriminatory discipline.  Although the stamped EEOC charge bore a later date (May 4, 2022), the department had "no reason to believe" she hadn't filed when she said she did.  After that disclosure, the department: (i) expressed concerns about her performance; (ii) opened supervisory investigations (including one tied to her discrimination complaints); and (iii) ultimately demoted and suspended her without pay.  The court held she plausibly alleged protected activity (opposition and participation), materially adverse actions under <u>Burlington Northern</u>, and but-for causation – relying on temporal proximity and intervening acts that reflected retaliatory animus.  The court emphasized that temporal proximity runs from the employer's knowledge of the protected activity, and that adverse actions shortly after knowledge typically permit an inference of causation at the pleading stage.  It denied the motion to dismiss the Title VII retaliation claim.

- <u>Protected activity</u>: opposition and participation are both covered; complaints to supervisors and filing/initiating a charge qualify.
- <u>Adverse action</u>: investigations, discipline, demotion/suspension can dissuade a reasonable employee—material adversity under <u>Burlington Northern</u>.
- <u>Causation</u>: decisionmaker knowledge is required; proximity from knowledge to action supports an inference; intervening retaliatory steps can bridge longer gaps.

Here, the Amended Complaint alleges that on January 2, 2022, Cottone began the MCAD process, discussed it openly, and that supervisors – including Captain Greeley – were aware within days (ECF No. 13 ¶¶ 32-34).  As in <u>Batchelor</u>, the City had no reason to doubt her filing once told, so the causation clock starts with management's knowledge, not the later formal service date.  <u>Batchelor</u> squarely endorses that framing at 12(b)(6).

Within days of that knowledge, Cottone was placed on administrative leave (Id. ¶ 34). What followed tracks Batchelor point-for-point: targeted criminal charges (id. ¶¶ 39-42), multiple internal affairs/supervisory investigations (id. ¶ 50), and culminating termination (Id. ¶ 51). Those are classic "materially adverse" steps that could dissuade a reasonable officer from engaging in protected activity, just as Batchelor recognized for investigations and serious discipline in a police-department context.

Finally, the sequence plausibly alleges but-for causation. Batchelor treated the post-knowledge timing, plus the pattern of escalating discipline keyed to the employee's discrimination complaints, as enough to plead causation. The same is true here: the short interval between the City's awareness of Cottone's charge and the immediate leave/initiations of proceedings – followed by a cascade of investigations and ultimate discharge – comfortably supports an inference of retaliatory animus at the pleading stage. Dismissal is improper under Batchelor.

## CONCLUSION

For the foregoing reasons, the Court should deny the City of Boston's Motion to Dismiss Counts I through IV of the Amended Complaint.

Respectfully Submitted by:

Plaintiff
SHANA COTTONE
By Her Attorney,

/s/Mark P. Gagliardi
Mark P. Gagliardi (MA BBO#: 657622)

LAW OFFICE OF MARK P. GAGLIARDI
56 Pine Street, Suite 200
Providence, RI 02903
(401) 277-2030 (office)
(401) 487-6666 (cell)
(401) 274-2780 (fax)
mark@markgagliardilaw.net

Date: August 11, 2025

## CERTIFICATION OF SERVICE

      I hereby certify that on this **11**th day of August 20**25**, I filed electronically this document with the ECF system of the United States District Court for the District of Rhode Island and, therefore, all counsel-of-record have received notice electronically.

                                              /s/Mark P. Gagliardi
                                              Mark P. Gagliardi