UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | | |
|---|---|---|
| SHANA COTTONE, | : | |
|     Plaintiff | : | |
| | : | |
| | : | |
| v. | : | C.A. No. 1:24-cv-13233-GAO |
| | : | |
| | : | |
| CITY OF BOSTON, by and Through | : | |
| Its Treasurer, Ashley Groffenberger; and | : | |
| MICHELLE WU, | : | |
|     Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MICHELLE WU'S MOTION TO DISMISS COUNT VI OF THE AMENDED COMPLAINT**

Plaintiff Shana Cottone ("Cottone"), by and through counsel, hereby submits this Memorandum of Law in Opposition to Defendant Michelle Wu's Motion to Dismiss Count VI of the Amended Complaint (ECF No. 16).

For the reasons stated herein, the Court should deny Defendant's motion.

## INTRODUCTION

Defendant Mayor Michelle Wu ("Mayor Wu") asks this Court to dismiss the First Amendment retaliation claim against her in her individual capacity on the ground that the Amended Complaint fails to allege her personal involvement in any adverse action. That argument ignores the plain text of the pleading and misstates the governing standard under Rule 12(b)(6).

The Amended Complaint alleges far more than mere supervisory status or generalized responsibility. It pleads that Mayor Wu: (1) publicly disparaged Cottone and her advocacy on a live radio program, signaling hostility to her protected speech; (2) caused her administration to circulate an "enemies list" of "vocal critics" to the Boston Police Department (the "BPD") that included Cottone; (3) directed, through her personal driver, the initiation of a criminal complaint against

Cottone arising from protests at Mayor Wu's own residence; (4) deployed senior advisors to urge severe disciplinary measures during a wave of Internal Affairs (IA) investigations that culminated in Cottone's termination; and (5) received, through her Chief of Staff, detailed updates on Cottone's pending IA cases that were forwarded directly to her.

Under settled First Circuit precedent, such allegations – taken as true and viewed with all reasonable inferences in Cottone's favor – are more than sufficient to plausibly plead Mayor Wu's personal participation, authorization, or approval of unconstitutional retaliation for Cottone's protected political speech. The motion to dismiss should be denied.

**RELEVANT FACTUAL BACKGROUND**

Cottone, a Boston Police Sergeant, engaged in extensive political speech and protest activity against the City's COVID-19 vaccine mandate, including organizing protests at Mayor Wu's personal residence (ECF No. 13 ¶¶ 30-31). Her opposition was public and unequivocal, and was conducted on her own time as a private citizen (Id. ¶¶ 117-124).

**Mayor Wu Publicly Disparages Cottone and Her Protected Advocacy.**

On March 4, 2022, during an appearance on the Dan Rea radio show, Mayor Wu referred to Cottone's advocacy group, Boston First Responders United, using the pejorative term "right wing extremist group" (Id. ¶¶ 35). On the same program, when Cottone called in, Mayor Wu acknowledged that she knew Cottone personally, had observed her protesting at her residence, and criticized her for protesting "too early in the morning" (Id. ¶¶ 36-37). At the time, no ordinance restricted 7:00 a.m. protests (Id. ¶ 143).

**Mayor Wu's Administration Circulated a "Vocal Critics" List Naming Cottone.**

Soon afterward, Mayor Wu's administration sent an email to the BPD identifying "vocal critics" of the Mayor, including Cottone and other COVID-19 vaccine protesters (Id. ¶ 144). This list was disseminated to the very department responsible for Cottone's discipline and termination.

**Mayor Wu Directed the Criminal Complaint Through Her Personal Driver.**

Cottone later discovered that Captain Greeley had spoken with Mayor Wu's personal driver, Sgt. Det. Cary Chin, who "instructed Greeley through Mayor Wu" to pursue a criminal complaint against Cottone for "reckless driving" and "disturbing the peace" arising from a protest at Mayor Wu's residence (Id. ¶ 43). Acting on "Chin's directive through Defendant Mayor Wu," Greeley directed another sergeant to initiate the charges (Id. ¶ 44). Cottone was the only protester charged, and the charge was ultimately dismissed for lack of probable cause (Id. ¶¶ 39-42, 47-48).

**Mayor Wu's Senior Advisors Urged Severe Discipline.**

Public records show that Mayor Wu's senior advisors "directly urg[ed] severe disciplinary actions" against Cottone (Id. ¶ 49). These recommendations came while the BPD opened six IA investigations against her (Id. ¶ 50), culminating in her termination on March 13, 2023 (Id. ¶ 51).

**Mayor Wu Personally Received Updates on Cottone's IA Cases.**

On June 8, 2022, Cottone's pending IA investigations were the subject of an internal email chain between senior BPD leadership and top members of Mayor Wu's administration. Tiffany Chu ("Chu"), Mayor Wu's Chief of Staff, was provided with detailed status updates on the progress of Cottone's cases, including case numbers, review status, and a plan to convene a "discipline (green folder) meeting" to determine sanctions under Rule 109 (Ex. A).[1] Chu then forwarded the email chain directly to Mayor Wu (Id.). Mayor Wu has no day-to-day operational role in BPD discipline.

---

[1] On a Rule 12(b)(6) motion, courts ordinarily limit their review to the complaint's allegations and exhibits. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). However, the First Circuit recognizes "narrow exceptions" allowing consideration of certain extrinsic documents without converting the motion into one for summary judgment: (1) documents whose authenticity is undisputed; (2) official public records; (3) documents central to the plaintiff's claim; and (4) documents sufficiently referred to in the complaint. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson). The emails on updates on Cottone's internal affairs cases – received in response to her public records request – falls squarely within these exceptions. The Amended Complaint specifically alleges that: "Emails obtained through public records show Defendant Mayor Wu's senior advisors directly urging severe disciplinary actions against Cottone, further underscoring discriminatory and retaliatory animus linked directly to her protected advocacy and speech." (ECF No. 13 ¶49). Thus, the document is expressly referenced in the pleadings, is central to Cottone's section 1983 claim against Mayor Wu, and its authenticity is not in dispute. Therefore, under Freeman, the Court may consider the exemption request in deciding the City's motion without triggering Rule 12(d) conversion.

A reasonable jury could conclude that her direct receipt of such granular IA updates reflected an intent to influence the disciplinary outcome. This unusual involvement occurred after Mayor Wu had publicly criticized Cottone's protests and after her administration had labeled Cottone a "vocal critic," supporting an inference of retaliatory motive.

**Mayor Wu Had Actual Knowledge of Cottone's Protected Speech.**

Both before and during these events, Mayor Wu was aware that Cottone's anti-mandate advocacy constituted protected First Amendment speech (ECF No. 13 ¶ 145). Cottone alleges that Mayor Wu's actions were not objectively reasonable under clearly established law (Id. ¶¶ 146-148), and that Mayor Wu's personal involvement makes her individually liable under 42 U.S.C. § 1983 (Id. ¶¶ 149-150).

## LEGAL STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). "[The court] may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013) (internal citations omitted). Rather, a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). A plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Courts use a two-step inquiry into plausibility: (1) the court must sift through the allegations in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). See Morales–Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012); and (2) the court must consider whether the factual allegations gives rise to a plausible claim to relief. Id. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc). Importantly, it is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage. Rodríguez-Reyes, 711 F.3d at 54.

**ARGUMENT**

**I.    COTTONE'S ALLEGATIONS ESTABLISH MAYOR WU'S PERSONAL INVOLVEMENT.**

In order to proceed on a section 1983 claim individually against Mayor Wu, Cottone need only allege that Mayor Wu was personally responsible for the constitutional deprivation at issue, not that she directly participated in it. Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). Rather, "[a]n official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." Id. (emphasis added). A supervisory official is not liable under section 1983 unless there is a causal connection, or affirmative link, between the misconduct and the official. Wolf–Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983).

Here, Mayor Wu's central claim – that the Amended Complaint fails to allege her personal involvement – collapses under the plain text of the pleading. The Amended Complaint provides:

> At all times relevant to this action, Defendant Mayor Wu was a "person acting under color of law" within the meaning of 42 U.S.C. § 1983 and is named as a defendant in this action, individually, and in her official capacity as Mayor of the City of Boston, who actively participated in, and stands responsible for the unconstitutional, wrongful, tortious and negligent acts, errors and omissions complained of herein.

(ECF No. 13 ¶ 3) (emphasis added).

> Defendant Mayor Wu stand (sic) personally liable to Cottone pursuant to 42 U.S.C. § 1983 based upon her personal involvement and direct participation in the unconstitutional course of conduct concerning Cottone complained of herein while acting under color of law and under pretense of law.

(Id. ¶ 149) (emphasis added).

The Amended Complaint further alleges that Mayor Wu: (1) publicly disparaged Cottone and her advocacy group on a radio program (Id. ¶ 35-37); (2) circulated or caused to be circulated a "vocal critics" list to the BPD naming Cottone (Id. ¶ 38); (3) directed, through her personal driver, the initiation of a criminal complaint (Id. ¶ 39-48); (4) had her senior advisors urge severe discipline (Id. ¶49); and (5) personally received, through her Chief of Staff, detailed interna; affairs updates on Cottone's pending cases, including plans for discipline meetings (Id.).

These are more than stray comments or remote awareness – they are concrete acts and approvals that plausibly show Mayor Wu either directed or knowingly acquiesced in the retaliation. First Circuit precedent squarely holds that personal involvement can be shown by direct acts, encouragement, approval, or knowing acquiescence in subordinates' conduct. Camilo-Robles v. Zapata, 175 F.3d 41, 44-46 (1st Cir. 1999); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582-83 (1st Cir. 1994).

## II. THE "VOCAL CRITICS" EMAIL IS ATTRIBUTABLE TO MAYOR WU.

Mayor Wu minimizes the "vocal critics" list by claiming it came from her "administration" and not her personally. But at the pleading stage, communications from a policymaker's senior staff – particularly when aligned with her own public hostility toward the plaintiff's speech – are attributable to her. See Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 17-19 (1st Cir. 2011)

(mayor's liability plausible where aides' actions aligned with his political animus). The list's targeting of Cottone, sent to the very department deciding her discipline, fits squarely within that principle.

### III. MAYOR WU'S DIRECT RECEIPT OF IA UPDATES SUPPORTS AN INFERENCE OF INFLUENCE AND MOTIVE.

The June 8, 2022 email chain shows Mayor Wu's Chief of Staff received granular updates on Cottone's IA cases and forwarded them directly to Mayor Wu (Ex. A). These were not general policy reports; they were case-specific operational updates, including anticipated discipline meetings. The Mayor has no formal role in BPD officer discipline, making her interest in these updates highly probative of a desire to influence the outcome. A jury could easily conclude that Mayor Wu's unusual involvement – following her public criticism of Cottone and her "vocal critics" designation – was aimed at ensuring Cottone's removal.

### IV. MAYOR WU DIRECTED THE CRIMINAL COMPLAINT THROUGH HER PERSONAL DRIVER.

Mayor Wu dismisses the "through Mayor Wu" allegation as too attenuated. But the aide at issue – Mayor Wu's personal driver – acted within her inner circle and conveyed instructions about a protest at Mayor Wu's own residence. At the pleading stage, this close relationship, the subject matter, and the timing are more than enough to support the inference that Mayor Wu approved or directed the criminal complaint. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 50-52 (1st Cir. 2009).

### V. MAYOR WU'S SENIOR ADVISORS' PUSH FOR SEVERE DISCIPLINE IS ATTRIBUTABLE TO HER.

Mayor Wu's motion concedes her senior advisors "urged severe disciplinary actions" but claims this doesn't show her involvement. Senior advisors operate in her chain of command and act with her delegated authority. Their recommendations – made while multiple IA investigations were pending – align with Mayor Wu's prior public attacks and internal targeting of Cottone, supporting the inference that Mayor Wu approved and encouraged the discipline.

## VI. THE "OFFICIAL CAPACITY" ARGUMENT DOES NOT DEFEAT INDIVIDUAL LIABILITY.

Mayor Wu's fallback position that official capacity claims are "duplicative" is irrelevant to whether she can be sued in her individual capacity. Hafer v. Melo, 502 U.S. 21, 25 (1991) confirms both can proceed where, as here, the Amended Complaint pleads specific acts by the official that caused the constitutional violation.

## VII. UNDER CROWDER V. LASH, THESE ALLEGATIONS PRESENT A JURY QUESTION ON PERSONAL INVOLVEMENT.

In Crowder v. Lash, 687 F.2d 996 (7th Cir. 1982), the Seventh Circuit addressed the scope of personal liability for prison officials under section 1983. The plaintiff, an inmate, alleged that two prison officials violated his constitutional rights by: (1) participating in disciplinary proceedings against him; (2) restricting his access to the courts and legal materials; (3) denying him access to religious service; and (4) failing to review his continued confinement in seclusion. The district court granted a directed verdict in favor of the officials, concluding there was insufficient evidence of their personal involvement.

The Seventh Circuit reversed, holding that direct, physical participation in the alleged constitutional deprivation is not required to establish personal responsibility. Id. at 1005. An official satisfies the personal responsibility requirement if she "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." Id. The court emphasized that the officials' roles in reviewing the inmate's seclusion status, their authority over his conditions of confinement, and their involvement in disciplinary decisions were enough to create a factual dispute for the jury. Id. at 1006.

The parallels here are striking. Cottone alleges that Mayor Wu:

1. Publicly disparaged her protected speech on a widely broadcast radio program;
2. Circulated or caused to be circulated a "vocal critics" list to the BPD, expressly naming Cottone;
3. Directed, through her personal driver, the initiation of a criminal complaint arising from protests at Wu's own residence;
4. Had her senior advisors push for severe discipline while multiple internal affairs cases were pending; and
5. Personally received, through her Chief of Staff, granular updates on those pending cases, including plans for disciplinary "green folder" meetings.

Just as the prison officials in Crowder were not physically present for every deprivation but nonetheless bore responsibility through their authority, review roles, and approvals, Mayor Wu's alleged actions plausibly show that the retaliatory measures occurred with her knowledge, consent, and encouragement. Under Crowder, these facts easily create a jury question as to whether Mayor Wu directed or knowingly acquiesced in the retaliation, and whether she acted with deliberate disregard for Plaintiff's First Amendment rights. At this stage, such factual issues cannot be resolved in mayor Wu's favor on a Rule 12(b)(6) motion.

## VIII. RULE 12(B)(6) STANDARD FAVORS COTTONE

Finally, Mayor Wu's suggestion that Cottone must plead a prima facie case ignores controlling law. The First Circuit has held that McDonnell Douglas elements are not a pleading requirement. Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54–55 (1st Cir. 2013). The question is whether the factual allegations, taken together, plausibly suggest retaliatory conduct – a standard the Amended Complaint easily meets.

## CONCLUSION

The Amended Complaint details Mayor Wu's active role in a retaliatory campaign against Cottone, including her public disparagement of Cottone's protected advocacy, circulation of a "vocal critics" list to the BPD, direction of a criminal complaint through her personal driver, deployment of senior advisors to urge severe discipline, and direct receipt of granular IA updates on Cottone's pending cases.

The Amended Complaint, bolstered by the June 8, 2022 email chain, plausibly alleges that Mayor Wu did far more than observe from the sidelines – she disparaged Cottone publicly, targeted her internally, directed adverse action through close aides, and received real-time updates on her discipline. These allegations create a clear factual dispute over Mayor Wu's motive and influence, making dismissal under Rule 12(b)(6) improper and leaving those questions for the jury.

For these reasons, Defendant Mayor Wu's motion to dismiss Count VI should be denied in its entirety.

Respectfully Submitted by:

Plaintiff
SHANA COTTONE
By Her Attorney,

/s/Mark P. Gagliardi
Mark P. Gagliardi (MA BBO#: 657622)

LAW OFFICE OF MARK P. GAGLIARDI
56 Pine Street, Suite 200
Providence, RI 02903
(401) 277-2030 (office)
(401) 487-6666 (cell)
(401) 274-2780 (fax)
mark@markgagliardilaw.net

Date: August 12, 2025

# CERTIFICATION OF SERVICE

      I hereby certify that on this **12**th day of August 20**25**, I filed electronically this document with the ECF system of the United States District Court for the District of Rhode Island and, therefore, all counsel-of-record have received notice electronically.

                                      /s/Mark P. Gagliardi
                                      Mark P. Gagliardi